IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MYRON RAHEISH LITTLETON                                                                   PLAINTIFF
#267819

v.                                          4:23-cv-00756-KGB-JJV

DIVORE, Deputy, Pulaski County
Regional Detention Facility; *et al.*                                                     DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.   INTRODUCTION**

Myron Raheish Littleton ("Plaintiff") has filed a *pro se* § 1983 Complaint and an Addendum alleging that on April 1, 2023, Defendants Sheriff Higgins and Deputy Divore failed to protect him from being severely beaten by several other detainees at the Pulaski County Detention Facility "(PCDF)."[1] (Docs. 1, 4.) Defendants have filed a Motion for Summary Judgment arguing that claim should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies. (Docs. 17-19.) Plaintiff has not filed a Response,

---

[1] All other claims were dismissed without prejudice during screening. (Docs. 8, 9.)

1

and the time to do so has passed. *See* Local Rule 7.2(b) (response to a motion is due fourteen days after service). Thus, the facts in Defendants' Statement of Undisputed Facts are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). And, as will be discussed herein, those facts are supported by the record. After careful consideration and for the following reasons, I recommend the Motion be GRANTED, the failure to protect claim against Defendants be DISMISSED without prejudice, and this case be CLOSED.

**II.    SUMMARY JUDGEMENT STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

**III.   ANALYSIS**

    **A.    The Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

      B.      **The PCDF's Exhaustion Procedure**

The PCDF's exhaustion procedure is found in Branch Directive D05-0001. (Docs. 19, 19-3, 19-4.) According to this Directive, a detainee must file a grievance within fifteen days of the grieved matter. Such grievances may be filed in writing or on the PCDF's computerized kiosk system. The Grievance Officer or designee must answer the grievance within ten working days, or sooner if the grieved matter is deemed an emergency. If the detainee is not satisfied, he or she may appeal to the Chief of Detention within ten working days. The Chief of Detention or designee must respond to the appeal within five working days, and that decision is the final step in the grievance procedure.

3

### C. Plaintiff's Grievances

The PCDF Custodian of Records says, in his sworn affidavit, Plaintiff filed 50 grievances between the April 1, 2023 attack and August 16, 2023, which is when he commenced this lawsuit. (Doc. 19-1.) But he only raised the attack in three grievances. My review of Plaintiff's grievance records confirms this to be correct. (Doc. 19-3.)

On April 8, 2023, Plaintiff filed grievance #31415932 alleging he was badly beaten by five other detainees and that officers failed to stop the attack sooner. (Doc. 19-3 at 29.) On April 13, 2023, a PCDF officer responded by asking Plaintiff to provide the "date, time, and location of this incident." (*Id*.) Rather than doing so, Plaintiff closed the grievance on April 14, 2023, and did not appeal. Thus, Plaintiff did not properly exhaust this grievance. *See Woodford*, 548 U.S. at 90 (proper exhaustion means "using all steps that the agency holds out, and doing so properly"); *Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) ("[d]ismissal without prejudice is mandatory" when a prisoner did not complete the final stage of grievance process).

On April 8, 2023, Plaintiff also filed grievance #31416019 saying he wanted charges filed against the inmates who attacked him. (Doc. 19-3 at 30.) Plaintiff did not allege, as he does in this lawsuit, that any PCDF officers failed to protect him from the attack. Instead, this grievance was against the inmates who harmed him. *See Townsend v. Murphy,* 898 F.3d 780, 784 (8th Cir. 2018) (no exhaustion when a prisoner's grievance did not contain "the specific factual allegations that would later appear in his federal complaint"); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when "the prison was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit). And, when a PCDF officer denied the grievance as repetitive, Plaintiff did not appeal. Instead, he closed the grievance. Thus, in addition to not raising the correct claim, this grievance is also improper because it was

4

not pursued until the final stage.

Finally, on April 20, 2023, Plaintiff filed grievance #31534331 saying he "was badly beaten and sexually assaulted earlier this month [and] I really want to file charges on the guys who are responsible."  (Doc. 19 at 35.)  Again, this grievance is against Plaintiff's attackers and not any PCDF officers who allegedly failed to prevent the attack.  Later, on April 21, 2023, a PCDF officer responded to this grievance by saying the matter was under investigation, and on May 20, 2023, she said it had been "passed on to the PREA coordinator."  Plaintiff did not appeal this response.  Instead, he closed it on June 13, 2023.  Accordingly, I conclude Plaintiff did not properly exhaust his administrative remedies regarding the failure to protect claim he is raising against Defendants in this lawsuit.

However, that is not the end of the analysis because the PLRA only requires prisoners to exhaust their "available" administrative remedies.  42 U.S.C. § 1997e(a).  The United States Supreme Court has clarified that administrative remedies are "unavailable" if: (1) the grievance procedure "operates as a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 578 U.S. 632, 642 (2016); *see also Townsend*, 898 F.3d at 783.  Plaintiff has not raised any arguments or presented any evidence suggesting administrative remedies were unavailable to him.  To the contrary, the numerous grievances in the record demonstrate administrative remedies were available and often used by Plaintiff.  (Doc. 19-3.)  Thus, I conclude Defendants are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies against them.  *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

That being said, I am sensitive to the serious nature of Plaintiff's allegations and the possibility that he may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him from proceeding with them in court. But the mandatory exhaustion requirement plays a critical role in the remedy process. On this matter, the Eighth Circuit has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 17) be GRANTED, Plaintiff's failure to protect claim against them be DISMISSED without prejudice, and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 19th day of January 2024.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE